# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRIAN MCNEAL**

**CIVIL ACTION**

**VERSUS**

**NO. 20-312-JWD-EWD**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, and JAMES LEBLANC**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted* (the "*MTD*") (Doc. 11) filed by Defendants, the State of Louisiana, through the Department of Public Safety & Corrections ("DPSC") and Secretary James M. LeBlanc (collectively, "Defendants"). Plaintiff Brian McNeal ("Plaintiff" or "McNeal") opposes the motion. (Doc. 15.) Defendants filed a reply. (Doc. 17, 19, 20.)[1] The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' *MTD* is granted.

## I.    Relevant Factual and Procedural Background

### A.  Factual Background

The following facts are taken from Plaintiff's *Complaint* (Doc. 1). Plaintiff was sentenced to a five-year suspended sentence with five years of active probation after pleading guilty to possession of cocaine and drug paraphernalia in Orleans Criminal District Court in October of 2015. (Doc. 1 at 3.) He was also enrolled in mental health court, which he began in January 2016

---

[1] Defendants originally filed a reply (Doc. 17) and subsequently filed the *Motion for Leave to File Reply Memorandum in One Excess Page* (the "*Motion for Leave*") because the attorney's signature block was on page 11 of the Defendants' reply. (Doc. 19.) The Court granted the *Motion for Leave*. (Doc. 20.)

under supervision of agents with the DOC's Department of Probation and Parole. (Doc. 1 at 1, 3.) In July of 2017, Plaintiff appeared for a mental health court hearing, and, due to alleged noncompliance with his probation, Plaintiff was remanded to Orleans Parish Prison. (Doc. 1 at 3.) The judge found Plaintiff in technical violation of his probation on August 3, 2017, and Plaintiff was sentenced to serve 90 days at the DOC's Steve Hoyle Intensive Substance Abuse Program (SHISAP) at the Bossier Parish Correctional Center. (Doc. 1 at 4.)

On August 29, Plaintiff was transferred from Orleans Parish Prison to the Elayne Hunt Correctional Center ("EHCC") near Baton Rouge, and he was held at the Hunt Reception and Diagnostic Center ("HRDC") upon arrival. (Doc. 1 at 4.) The HRDC is intended primarily for short-term inmate screening, and it does not allow inmates access to programs such as sports, hobby craft, educational programs, and substance abuse programs. (Doc. 1 at 4.) Plaintiff was scheduled to transfer to the Steve Hoyle Program on September 5, 2017. (Doc. 1 at 4.) However, he was never transferred because the EHCC cancelled the transfer after determining that Plaintiff had a mental impairment that disqualified him from the treatment program. (Doc. 1 at 4.) "McNeal never set foot inside Steve Hoyle or any other substance abuse treatment program" despite the judge's order. (Doc. 1 at 1.) Plaintiff remained incarcerated at the HRDC until his release on December 12, 2017; he was held in HRDC for a total of 106 days in what the Plaintiff describes as "a bare holding cell that amounts to a 'waiting room.'" (Doc. 1 at 1, 5.)

According to Plaintiff, the DOC possessed medical records which explained his mental health diagnoses. (Doc. 1 at 3.) DOC records indicate that the DOC knew Plaintiff was under psychiatric treatment and had prescriptions for psychiatric medication. (Doc. 1 at 3.) Because the medical staff at EHCC "disregard[ed] the judge's order and instead held Plaintiff in the HRDC "waiting room" without access to substance abuse treatment typically available to DOC inmates

"based solely on the fact that Mr. McNeal has been diagnosed with mental health conditions," Plaintiff brings the instant suit. (Doc. 1 at 1–2.)

### B. Plaintiff's Claims Against the Defendants

Plaintiff claims the Defendants are liable for "federal rights violations under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), which are enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)." (Doc. 1 at 2.) The *Complaint* states, "Title II of The Americans with Disabilities Act and Section 504 of the Rehabilitation Act require that public entities affirmatively ensure that disabled people have meaningful access to programs provided." (Doc. 1 at 6.) It continues by noting that "[s]ubstance abuse treatment in prison is a program, as demonstrated by its specific inclusion in La. R.S. 15:574.9(G)" and "[s]ince prisoners are uniquely dependent on prisons for the services they provide . . . prisons have a higher obligation to provide meaningful access to their disabled prisoners." (Doc. 1 at 6.)

Plaintiff "suffered from an impairment that substantially limited his life activities and met the definition of a disability within the meaning of the ADA, 42 U.S.C. § 12102(2), and the Rehabilitation Act, 29 U.S.C. § 705(9)" at all times relevant to the present action. (Doc. 1 at 6.) Plaintiff further alleges that even if he did not suffer from such an impairment, he would still be protected because the "statutes also protect persons who are regarded by a public entity as having a physical or mental impairment that substantially limits a major life activity" regardless of whether the person actually has such impairment. (Doc. 1 at 7.)

Plaintiff alleges Defendants regarded him as disabled "when they decided that his mental or physical health conditions were so debilitating as to exclude him from the SHISAP program and violated Title II of the ADA and the RA by refusing to provide him "access to an urgently

needed, court-ordered substance abuse treatment program by reason of his disability." (Doc. 1 at 7.) He alleges they further violated Title II "[w]hen Defendants excluded Mr. McNeal from access to sports, hobby craft, educational programs, substance abuse programs, etc. by reason of his disability." (Doc. 1 at 7.)

Plaintiff asserts, "Defendants also use eligibility criteria that tend to screen out people with disabilities." Despite "a court and probation agent deem[ing] Mr. McNeal eligible for a 90-day sentence to be served at a custodial sentence abuse treatment program under Act 402" Defendants "denied him access to that program because he suffers from a mental impairment that is directly related to his substance abuse problems." (Doc. 1 at 7.) Plaintiff asserts "Defendants intentionally discriminated against Mr. McNeal"  because Defendants "failed to provide Mr. McNeal with meaningful access to the services at issue in this case," "failed to provide Mr. McNeal with program access to the services at issue in this case, and "discriminated against Mr. McNeal with deliberate indifference to his needs as an individual with a disability." (Doc. 1 at 8.)

As an alternative argument, Plaintiff asserts Defendants are liable under the ADA and RA based on *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 365 (5th Cir. 1995), which held "the Supreme Court case of *Alexander* expressly rejected the notion that a plaintiff is required to show intentional discrimination to establish a prima facie case of disparate impact discrimination under the RA. (Doc. 1 at 8.) Plaintiff states that the harm he sustained "is the expected and foreseeable consequence of Defendants' failure to comply with the requirements and mandates of the ADA and RA" and that "[w]hen the State of Louisiana failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Mr. McNeal in this lawsuit." (Doc. 1 at 8.)

Plaintiff requests judgment entered against Defendants and that the Court grants declaratory relief, compensatory damages not to exceed $20, legal costs and attorneys fees, a permanent injunction requiring Defendants to comply with the ADA and RA and to provide appropriate opportunities, accommodations, and services, and any other relief Plaintiff may be entitled at law or in equity. (Doc. 1 at 9.)

### C. Procedural Background

Plaintiff filed his *Complaint* on May 22, 2020. (Doc. 1.) On July 22, 2020, Defendants filed the instant *Motion to Dismiss* ("*MTD*") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 11.) There, Defendants seek to dismiss Plaintiff's claims for injunctive relief on two grounds. First, Defendants move to dismiss Plaintiff's claims for lack of subject matter jurisdiction because the Plaintiff lacks standing to sue for injunctive relief pursuant to Federal Rule of Civil Procedure 12. (Doc. 11-1 at 2.) Second, Defendants move to dismiss Plaintiff's claims because they have prescribed. (Doc. 11-1 at 4.) Plaintiff filed an *Opposition to Defendants' Motion to Dismiss* (the "*Opposition*") on July 31, 2020. (Doc. 15.) Two attachments were included with the *Opposition*: the deposition of Robin Milligan, the ARDC manager at the Hunt Correctional Center (Ex. A, Doc. 15-1) and Plaintiff's criminal record (Ex. B, Doc. 15-2.) On August 18, 2020, Defendants filed the *Reply Memorandum in support of MTD*. (Doc. 17.)

## II. Relevant Standards

### A. Rule 12(b)(1)

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained: "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 135 S. Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

III.    **Discussion**

    A.  **Defendants' 12(b)(1) Motion**

        *1.  Parties' Arguments*

Defendants assert that this Court lacks subject matter jurisdiction over Plaintiff's claims for injunctive relief because Plaintiff lacks standing. (Doc. 11-1 at 2.) Defendants explain, "Standing is determined as of the time that suit is filed." (Doc. 11-1 at 2–3 (citing *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 302 (5th Cir. 2005) (citing *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000)))). Defendants argue that because "[t]he party invoking federal jurisdiction bears the burden of establishing" the elements of standing, "Plaintiff must affirmatively prove his standing to sue for injunctive relief." (Doc. 11-1 at 3.) Defendants continue, "The Plaintiff fails to plead facts establishing he had standing to sue for injunctive relief at the outset of this litigation." (Doc. 11-1 at 3.) Defendants argue the *Complaint* does not allege facts "indicating that Defendants are committing any ongoing misconduct which could be redressable through prospective injunctive relief." (Doc. 11-1 at 3.)

Defendants assert that Plaintiff's alleged injury was that "he was not sent to Steve Hoyle for 90 days back in 2017," which cannot be redressed by this Court by injunction because Plaintiff is no longer in prison and no longer under a sentence to receive substance abuse treatment at Steve Hoyle. (Doc. 11-1 at 3.) Because "a request for an injunction is moot upon the happening of the event sought to be enjoined," this Court lacks authority to resolve this issue.

In support of its argument that this Court lacks subject matter jurisdiction, Defendants rely on the case *Valles v. Samuels*, 506 F. App'x 334, 335 (5th Cir. 2013), another former-prisoner claim for injunctive relief based on the allegation that he should have been released sooner than he was. The Fifth Circuit in *Valles* held, "Because [the Plaintiff] is no longer incarcerated [and]

seeks only injunctive relief . . . his claim that prison employees conspired to lengthen his sentence is moot." (Doc. 11-1 at 4.) Thus, Defendants conclude, this court "cannot order injunctive relief that would provide the Plaintiff with any remedy because he cannot be required to serve another 90 day sentence at the 'correct' facility" and "Plaintiff's claims for injunctive relief must be dismissed for lack of standing due to mootness." (Doc. 11-1 at 4.)

In the *Opposition*, Plaintiff responds that he has standing to sue for injunctive relief under the doctrine of "capable of repetition but evading review," a doctrine applying to an action in which the duration of the action is too short to be fully litigation and there is reason to expect the complainant will be subject to the same action again in the future. (Doc. 15 at 9.) As to the first prong, Plaintiff argues that neither his 90 day sentence nor his 106 days spent in custody were sufficient in duration to fully litigate the action. As to the second prong, Plaintiff asserts that this matter is one "of broad public importance" and "there is good reason to believe that in the future [Plaintiff] will be denied access to services within the DOC when his health screenings reveal a mental disability." (Doc. 15 at 10.) Because all inmates sentenced to serve time in the DOC is subjected to a health screening at HRDC, Plaintiff argues that any inmate whose screening reveals mental health diagnoses is likely to suffer the same harm by Defendants. (Doc. 15 at 10.) Further, Plaintiff argues that the fact he was been arrested 25 times in the past 23 years provides a probability that he will be injured by the challenged conduct again in the future. (Doc. 15 at 10–11.) Thus, Plaintiff concludes, this Court should deny Defendants' *MTD*.

In the *Reply*, Defendants disagree with the arguments set forth in Plaintiff's *Opposition*. Defendants assert that Plaintiff failed to explain "how any injunctive relief awarded by this Court will redress *his* alleged injury." (Doc. 17 at 1.) Defendants argue Plaintiff's possibility of future injury, that the EHCC medical staff will disqualify Plaintiff from drug rehabilitation treatment at

Steve Hoyle in the future based on his disability of opiate addiction, is "too speculative to support Article III standing." (Doc. 17 at 3–4.) Defendants reject the notion that his history of arrests suggests a high probability that he will be injured by the challenged conduct in the future by noting that the instant suit was filed in May 2020, over three years since Plaintiff's last arrest. (Doc. 17 at 4.) Defendants state, "Plaintiff's arrests are clearly irrelevant to the standing inquiry because it is not the *arrest* that places plaintiff in a position to be sent to HRDC but, rather a *conviction*, a sentence to hard labor, and a transfer to HRDC for classification purposes." (Doc. 17 at 4.) This "speculative chain of possibilities that must come to fruition in order for the Plaintiff to sustain the same alleged harm again in the future" consists of 7 different hypothetical, future events that fail to satisfy the burden under Rule 12(b)(1). (Doc. 17 at 4–5.)

Defendants also argue that Plaintiff's reliance on the doctrine of "capable of repetition yet evading review" is flawed. Defendants distinguish *Roe v. Wade*, 410 U.S. 113 (1973), because "Roe unequivocally had standing at the time the suit was filed" whereas here the DPSC classification process does not evade review due to short duration of sentences in all cases. (Doc. 17 at 5–6.) Defendants also distinguish *Norman v. Reed*, 502 U.S. 279, 112 S. Ct. 698, 116 L. Ed. 2d 711 (1992), in which petitioners had standing at the time suit was filed and it was indisputable that the alleged harm would occur inevitably in the future. (Doc. 17 at 6.) However, Defendants assert that Plaintiff merely alleges speculative future harm that he "will be arrested again, and convicted, and sentenced to hard labor." (Doc. 17 at 6–7.) Defendants also distinguish the cases involving press access to court hearings because the "certainty of future court hearings is undeniable" which Defendants claim is not true for Plaintiff's future arrest. (Doc. 17 at 7.) Defendants assert that the cases relied upon by Plaintiff in the *Opposition* do not support this Court conferring standing based on the doctrine of "capable of repetition yet evading review." (Doc. 17

10

at 7.) For these reasons, Defendants conclude Plaintiff failed to meet his burden in proving standing. (Doc. 17 at 7.)

### 2. *Applicable Law*

Article III of the Constitution requires federal courts to hear only "cases" and "controversies." "One element of the case-or-controversy requirement" is that plaintiffs "must establish they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The standing doctrine is a threshold inquiry to adjudication, which defines and limits the role of the judiciary." *Berry v. LoanCity*, No. 18-888, 2019 WL 2870849, at *4 (M.D. La. July 3, 2019) (deGravelles, J.) (citing *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 853 (E.D. La. 2008) (citing *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003))). "It is well settled that unless a plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case." *Id.* "In the absence of standing, there is no 'case or controversy' between the plaintiff and defendant which serves as the basis for the exercise of judicial power under Article III of the constitution." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). "The key question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant federal court jurisdiction." *Id.* (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663 (1962)).

"[T]he irreducible constitutional minimum of standing consists of three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. at 560–561)). The party invoking federal jurisdiction bears the burden of

proving standing. *Id.* The court at the pleading stage bases its decision on the allegations of the complaint, and the complaint must "clearly. . . allege facts demonstrating" each element of standing. *Spokeo*, 136 S. Ct at 1547 (citing *Warth*, 422 U.S. at 518).

Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury in fact, and therefore would benefit from the court's granting of such equitable relief. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015). The injury in fact requirement is the "[f]irst and foremost' element of standing. *Id.* (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). "Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal citations omitted).

The injury must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" for a court to confer Article III standing. *Lujan,* 504 U.S. at 560. "A plaintiff must show that "they face a palpable present or future harm, not harm that is 'conjectural or hypothetical.'" *Levy v. Louisiana Dep't of Pub. Safety & Corr.*, 371 F. Supp. 3d 274, 284 (M.D. La. 2019) (deGravelles, J.) (quoting *Perez*, 624 F. App'x at 183). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse affects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983); *see Plumley v. Landmark Chevrolet, Inc.* 122 F.2d 308, 312 (5th Cir. 1997). "A plaintiff seeking injunctive relief based on an alleged past wrong must show that there is reason to believe that he would directly benefit from the equitable relief sought." *Mosley v. Midas Worthington, LLC*, No. 19-75, 2020 WL 113350, at *3

(M.D. La. Jan. 9, 2020) (deGravelles, J.) (internal citations omitted). "Past wrongs can be considered, however as evidence of an actual threat or repeated injury." *Perez*, 624 F. App'x at 183. "Future injuries can provide the basis for standing, but they 'must be certainly impending to constitute injury in fact,' and '[a]llegations of possible future injury are not sufficient.' An injury based on a 'speculative chain of possibilities' does not confer Article III standing." *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2012)).

### 3. Analysis

In short, Plaintiff lacks standing to sue for injunctive relief. Plaintiff's alleged injury is that, based on his mental health diagnosis, the DOC failed to send him to 90 days substance abuse treatment program which he was sentenced to after violating his probation. (Doc. 1 at 5.) Instead, he remained at the HRDC for 106 days and, in addition to being denied access to substance abuse treatment, Plaintiff was denied access to sports, hobbycrafts, educational programs, and other typical programs offered to DOC inmates. (Doc. 1 at 5.) Based on the DOC's "intentional discrimination under the RA and ADA" Plaintiff request the Court to grant "[a] permanent injunction requiring Defendants to comply with the requirements of the ADA/RA and to provide the appropriate opportunities, accommodations, and services." (Doc. 1 at 8–9.)

A plaintiff seeking injunctive relief based on an alleged past wrong must show there is a real or immediate threat that he will be wronged again. *Plumley v. Landmark Chevrolet*, 122 F.3d 308, 312 (5th Cir. 1997). Because Plaintiff suffered the injuries alleged in 2017 and is not presently incarcerated, his past exposure to wrongful conduct can only be sufficient for this Court to confer standing if Plaintiff faces a threat of future harm or repeated injury. *See Perez*, 624 F. App'x at 183.

In *City of Los Angeles v. Lyons*, the Supreme Court explained:

> Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.

461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). The Supreme Court in *Lyons* relied on *O'Shea v. Littleton*, 414 U.S. 488, 496–97, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974), which stated:

> Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners . . . we are nonetheless unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.

*Id.* Following *Lyons*, when a plaintiff's standing depends a future arrest, the speculative nature of any future illegal activity by the plaintiff is insufficient to warrant standing for injunctive relief. *D.B. v. CorrectHealth E. Baton Rouge, LLC*, No. 19-620, 2020 WL 4507320, at *10 (M.D. La. Aug. 5, 2020) (deGravelles, J.).

The possibility that Plaintiff will be injured in the future by the same conduct challenged here is too speculative for this Court to confer Article III standing. Plaintiff's standing to seek the injunction requested depends on whether he is likely to suffer future injury from having his right

under the ADA violated by Defendants in the future by the same conduct challenged here. The *Complaint* fails to allege any facts that suggest Plaintiff is likely to be arrested in the future. Plaintiff alleged no facts in the *Complaint* that suggests he faces a "real and immediate" threat of future injury. As such, Plaintiff lacks standing to seek prospective injunctive relief.

Even looking beyond the *Complaint*, Plaintiff fails to establish the injury in fact requirement of standing. Plaintiff asserts in his *Opposition* that his history of 25 arrests in the past 23 years is sufficient to meet the injury in fact requirement of standing because it provides a "reasonable probability" he will suffer the same harm in the future. (Doc. 15 at 10–11.) However, "reasonable probability" is not the proper standard in determining whether a future injury meets the injury in fact requirement of standing. Rather, the proper standard requires the future harm to be "certainly impending" or a "substantial risk of harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5, 133 S. Ct. 1138, 1147, 1150 n.5, 185 L. Ed. 2d 264 (2013). When a theory of standing relies on a "highly attenuated chain of possibilities" for a future injury to occur, the injury in fact requirement of standing is not satisfied. *See id.* at 410. In *Clapper*, the Supreme Court held that a chain of five independent hypothetical events needing to occur before the alleged future harm could occur was too speculative to meet the injury requirement to confer standing.

As Defendants assert here, the chain of events required to occur from the Plaintiff's current position to the future harm is highly attenuated. In fact, the chain of events, at a minimum, required for Plaintiff to suffer the same harm alleged in the *Complaint* requires that (1) he be arrested; (2) he be convicted of the crime; (3) he be sentenced to DOC custody; (4) he be subjected to a health screening at HRDC after sentencing; and (5) he be denied access to treatment and other programs based on his disability. Similar to *Clapper*, the chain depends on the occurrence of five hypothetical events dependent on the actions of various third persons for the future injury to occur.

15

Thus, Plaintiff's past arrest record is insufficient to satisfy the injury in fact requirement of standing because he failed to show a real or immediate threat that he will be wronged in the future.

The facts at issue are distinguishable from the recent case *D.B. v. CorrectHealth East Baton Rouge, LLC*, No. 19-620, 2020 WL 4507320 (M.D. La. Aug. 5, 2020) (deGravelles, J.). In *CorrectHealth*, Plaintiff, who suffered from a "continued pattern of obsessive compulsive thoughts that led to his prior incarcerations" alleged in the complaint that there was a high likelihood that he would return to the same prison because his disability was permanent, his obsessive compulsive thoughts that led to his previous incarcerations were ongoing, he had been arrested twice in the past year, and it was likely that he would be able to access a smartphone and repeat his prior behavior. *Id.* at *9. Here, Plaintiff alleged no such facts in the *Complaint*. Further, Plaintiff's most recent arrest occurred on October 12, 2016. (Ex. B, Doc. 15-2.) Plaintiff failed to alleged specific facts that lead to an inference of a real and immediate threat of future arrest and custody by the DOC, so the holding of *CorrectHealth* is inapplicable. Thus, Plaintiff failed to show that he has a real threat of future harm that can be remedied by injunctive relief.

In asserting he has standing to sue for injunctive relief, Plaintiff's reliance on the doctrine of "capable of repetition but evading review" is misplaced. (*See* Doc. 15 at. 9) Mootness is often referred to as "the doctrine of standing in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth*, 528 U.S. at 170. Despite this common phrasing, the two justiciability doctrines are improperly conflated by Plaintiff. *Id.* ([I]f mootness were simply "standing set in a time frame," the exception to mootness for acts that are "capable of repetition, yet evading review" could not exist."). The "capable of repetition, yet evading review" doctrine applies to mootness, not standing. *Id.* ("Standing admits of no similar exception; if a plaintiff lacks

standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."). Without presenting a case or controversy at the onset of the litigation, a mootness analysis is unnecessary because mootness applies when standing was present upon the filing of the complaint but ceased to exist at a later stage of the litigation. *Stringer v. Whitley*, 942 F.3d 715, 724 (5th Cir. 2019). Because Plaintiff failed to allege facts in the *Complaint* sufficient to confer standing, the mootness doctrine of capable of repetition yet evading review is inapplicable.

For all these reasons, Plaintiff has failed to satisfy his burden of establishing standing. Accordingly, Plaintiff's claim for injunctive relief must be dismissed.

### B.  Defendants' 12(b)(6) Motion

#### 1.  *Parties' Arguments*

Defendants' second ground for the *MTD* is that Plaintiff's ADA and RA claims are prescribed. (Doc. 11-1 at 4.) Plaintiff filed the *Complaint* on May 22, 2020 based on the allegations that Defendants violated his rights under the ADA and RA between August 3, 2017 and November 3, 2017. (Doc. 11-1 at 4.) Neither the ADA nor the RA contain a statute of limitations, so "federal law borrows the applicable limitations period from state law." *Reeves v. LeBlanc*, No. 13-586, 2016 WL 828744, at *2 (M.D. La. Feb. 8, 2016). Because the Louisiana Code of Civil Procedure art. 3492 states that tort actions are subject to a liberative prescription of one year, Plaintiffs claims are subject to a one year prescriptive period." (Doc. 11-1 at 5.) Defendants explain that an injury occurs under Title II when a disabled person has sufficient information to know he was denied benefits of a service by a public entity. (Doc. 11-1 at 5.) Therefore, "Plaintiff had a complete and present cause of action on November 3, 2017" at the latest, so he was required to file suit by

November 3, 2018. (Doc. 11-1 at 5.) Because Plaintiff's ADA and RA claims were filed almost two years later, Defendants assert the Plaintiff's claims are prescribed. (Doc. 11-1 at 5.)

Defendants note that Plaintiff "is likely to argue a four-year statute of limitations," which requires Plaintiff to show his claims were "made possible" by the 2008 ADA amendments. (Doc. 11-1 at 5.) Defendants state "[t]he primary question is whether the Plaintiff would have qualified as disabled under the pre-ADAA interpretation of 'disability.' (Doc. 11-1 at 5.) Defendants cite *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592, 119 S. Ct. 2176, 2183, 144 L. Ed. 2d 540 (1999), in which the Supreme Court "acknowledged that persons with mental illnesses who are subject to confinement in state-run in-patient treatment facilities, are qualified 'persons with disabilities' protected by Title II of the ADA. (Doc. 11-1 at 6.) Thus, Defendants argue, while Plaintiff's claims were possible before the 2008 ADA amendments, Plaintiff failed to show that his claims were "made possible" by the ADA amendments. (Doc. 11-1 at 6.) Defendants conclude that because Plaintiff's claims are subject to the one-year statute of limitations, "they are clearly prescribed." (Doc. 11-1 at 6.) Defendants request this court to dismiss Plaintiff's claims for damages as untimely. (Doc. 11-1 at 6.)

In the *Opposition*, Plaintiff argues his claims are not prescribed for two reasons. (Doc. 15 at 2.) First, Plaintiff argues that his claims are subject to a four year prescriptive period. Second, Plaintiff argues that even if the four year prescriptive period is inapplicable, his claims are timely because they did not accrue until May 23, 2019 when he first discovered he was denied benefits by HRDC. (Doc. 15 at 2.)

First, Plaintiff argues the four year prescriptive period applies to his claims because the claims were "made possible" by the 2008 ADA amendment which defined the disability of an individual as "a physical or mental impairment that substantially limits one or more major life

activities of such individuals." (Doc. 15 at 2.) Plaintiff reemphasizes that his diagnoses are substance induced psychosis and stimulate and opiate use disorder. (Doc. 15 at 3.) Plaintiff argues that the case relied on by Defendants in asserting that the claims were made possible prior to the ADA amendment, *Olmstead*, is inapplicable because it fails to establish Plaintiff's claims were made possible before the amendments nor does it cover his particular type of mental illness. (Doc. 15 at 3–4.) Instead, Plaintiff argues, *Olmstead* dealt with plaintiffs with schizophrenia and personality disorders, and the *Olmstead* plaintiffs did not dispute whether their conditions were considered disabilities under the ADA before the 2008 amendments. (Doc. 15 at 4.) "In fact, prior to the ADA revision definition of disability, addiction and substance abuse were not often considered sufficient to qualify as disabilities, due to their nature as 'temporary afflictions.'" (Doc. 15 at 4.)

In support of his claims, Plaintiff cites *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 859 (5th Cir. 1999), in which the Fifth Circuit held that "the fact that a person is perceived to be a drug addict does not necessarily mean that person is perceived to be disabled under the ADA." (Doc. 15 at 4.) Plaintiff asserts that *Zenor* and other cases prior to the 2008 amendments, such as *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997), demonstrate that the legal definition of "disability" before the ADA amendments excluded addition and substance abuse because they were considered "temporary afflictions." (Doc. 15 at 4.) In reliance on pre-2008 jurisprudence, Plaintiff asserts that his claims were not possible under the old definition of disability but were "made possible" by the 2008 revisions of the ADA and the revised definition of disability which were altered to include temporary or episodic illnesses. (Doc. 15 at 5.)

Second, Plaintiff asserts that, even if the four year prescriptive period is inapplicable as Defendants suggest, his claims are not prescribed because they did not accrue until May 23, 2019.

(Doc. 15 at 5.) Plaintiff insists that he "did not have a complete and present cause of action until May 23, 2019, which gave him until May 23, 2020 to file suit under a one-year time limitation." (Doc. 15 at 5.) Plaintiff reasons that accrual occurred the moment he became aware of his injury or had sufficient information to know that he was injured, so his Title II cause of action accrued when he had sufficient information to know that he was denied benefits typically afforded to DOC inmates. (Doc. 15 at 5–6.)

Plaintiff disputes Defendants' arguments that his claims accrued on November 3, 2017, the date that his 90-day sentence was supposed to end, because "it mischaracterized the nature of [his] injury and when he gained knowledge of it." (Doc. 15 at 6.) Plaintiff explains that he was unaware HRDC was not a long-term inmate housing option and was unaware of the benefits he was denied during his stay. (Doc. 15 at 6.) Plaintiff asserts his claims for relief only accrued when he learned of his injury during the May 23, 2019 deposition of Robin Milligan in the *McNeal v. Louisiana Department of Public Safety and Corrections* case. (Doc. 15 at 6.) Plaintiff cited *Frame v. City of Arlington*, 657 F.3d 251, 238 (5th Cir. 2011) for support, in which the Fifth Circuit held that Title II claims of disabled individuals for the city's denied benefit of improved sidewalks accrued not when the sidewalks were built, but rather when they "knew or should have known they were being denied the benefits of the City's newly built or altered sidewalks." (Doc. 15 at 8.) Similarly, Plaintiff asserts, his claims "*did not* accrue when he was held at HRDC, but rather on the date he knew or had reason to know that his incarceration at HRDC denied him the benefits of DOC programs like sports, hobby craft, educational programs, and substance abuse treatment." (Doc. 15 at 8.) Since he did not learn of his injury until the deposition on May 23, 2019, Plaintiff asserts his complaint was timely filed on May 22, 2020. (Doc. 15 at 9.) For these reasons, Plaintiff concludes the Defendants' *MTD* for failure to state a claim should be denied. (Doc. 15 at 9.)

In the *Reply*, Defendants dispute Plaintiff's argument that his claims did not accrue until May 23, 2019, the date Plaintiff claims to have learned of the benefits he was denied during his time at HRDC. (Doc. 17 at 7–8.)  Defendants refer to Plaintiff's argument as "meritless." (Doc. 17 at 7.) Defendants state, "Plaintiff knew, at the time he was at ARDC, that he did not have access to those programs." (Doc. 17 at 8.) Defendants quote *Frame* which states, "[A]cural occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief'" or "the moment plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." (Doc. 17 at 8.) Defendants assert that the question is not whether Plaintiff had actual knowledge but rather sufficient information to know he had been injured. (Doc. 17 at 8–9.) As to this first argument, Defendants assert "Plaintiff's ignorance of his legal rights does not extend the accrual date of his claim." (Doc. 17 at 8.) Defendants reason that because Plaintiff had all the information needed to file this suit while being held at HRDC, he had a complete and present cause of action on December 12, 2017 at the later, when Plaintiff knew that he was to be released without attending the substance abuse treatment program. (Doc. 17 at 8–9.)

Second, Defendants reassert that Plaintiff's ADA and RA claims for money damages are not subject to the four year prescriptive period for claims "made possible" by the 2008 ADA amendments. (Doc. 17 at 7.) Defendants state that Plaintiff does not establish a factual basis in the *Complaint* to indicate that his illness was a "temporary affliction." Defendants state that Plaintiff was sentenced to probation under supervision by the Mental Health Court for five years and, as Plaintiff suggests, his future mental health screenings will likely reveal a mental health disability. (Doc. 17 at 10.) While Plaintiff's *Opposition* suggests his illness to be "episodic" or "in remission,"

the *Complaint* does not. (Doc. 17 at 10.) In fact, Defendants assert Plaintiff only used the language

in the *Opposition* to "circumvent his prescription problem." (Doc. 17 at 10.)

Defendants argue that the cases relied upon by Plaintiff weaken his assertions because

Plaintiff alleges in the *Complaint* that his "mental impairment substantially limited his life

activities." (Doc. 17 at 10.) The Fifth Circuit in *Zenor* held that conditions such as alcoholism or

drug addiction, require a demonstration that the condition substantially limits his ability to perform

major life functions. (Doc. 17 at 10.) Defendants also discuss a similar holding in *Burch* which

held that the plaintiff "offered no evidence that he suffered from any substantially limiting

impairment of any significant duration." (Doc. 17 at 10.) Because Plaintiff offered evidence that

his mental illness is "permanent or long term", Defendants conclude that Plaintiff's claims are not

subject to the four year prescriptive period afforded to claims "made possible" by the 2008

amendments to the ADA. (Doc. 17 at 10.) For these reasons, Defendants request the Court dismiss

Plaintiff's claims with prejudice as untimely.

### 2. *Applicable Law*

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident

from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for

tolling or the like." *Newman v. Coffin*, 464 F. App'x 359, 362 (5th Cir. 2012) (quoting *Jones v.

Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003)). Neither Title II of the ADA nor the RA state a

limitations period. *See Frame*, 657 F.3d at 236. "[T]he default four-year limitations period for

federal causes . . . applies only to claims 'arising under an Act of Congress enacted after' December

1, 1990" and "[b]oth Title II and the Rehabilitation Act were 'enacted' before December 1990. *Id.*

at 236-37 (quoting 28 U.S.C. § 1658(a)). "[A] cause of action aris[es] under an Act of Congress

enacted after December 1, 1990—and therefore is governed by § 1658's 4–year statute of

limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 270, 124 S. Ct. 1836, 1838, 158 L. Ed. 2d 645 (2004) (internal quotations omitted).

"With respect to ADA claims, federal law borrows the applicable limitations period from state law, and the cause of action is subject to a one-year statute of limitations." *Reeves v. Leblanc*, No. 13-586, 2016 WL 828744, at *2 (M.D. La. Feb. 8, 2016) (citing *Frame*, 657 F.3d at 237 (finding that claims under Title II of the ADA and under the Rehabilitation Act are subject to the relevant state's limitations period for personal injury cases)). Louisiana Code of Civil Procedure article 3492 states, "Delictual actions are subject to a liberative prescription of one year." "Drawing from the text of § 12132, an injury occurs (and a complete and present cause of action arises) under Title II when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity." *Frame*, 657 F.3d at 238.

"Although the applicable limitations period is determined pursuant to state law, the accrual of a cause of action is resolved by federal law." *Reeves*, 2016 WL 828744, at *2 (citing *Wallace v. Kato,* 549 U.S. 384, 388 (2007); *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988)). "'[T]he limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof.'" *Newman v. Coffin,* 464 F. App'x at 362 (quoting *Jensen,* 841 F.2d at 606); *see also Frame,* 657 F.3d at 238 ("[T]he rule is that accrual occurs when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. In other words, accrual occurs the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.") (footnotes and internal quotation marks omitted). "The requisite knowledge that a plaintiff must have to begin the running of the limitations

period is merely that of the facts forming the basis of his cause of action, . . . not that of the existence of the cause of action itself." *Jensen,* 841 F.2d at 606 (internal quotation marks omitted) (alteration in original).

### 3. Analysis

In the *Complaint*, Plaintiff claims his ADA and RA rights where violated between August 29, 2017 and December 12, 2017 when Defendants refused to provide treatment and excluded his access to other programs typically available to inmates "by reason of his disability." (*See* Doc. 1 at 4–5, 7.) Further, in the *Complaint*, Plaintiff's alleged diagnoses, which he claims were included in the DOC's medical records, includes "Substance Induced Psychosis and Stimulant and Opiate Use Disorders." (Doc. 1 at 3.) Plaintiff alleges his "mental impairment substantially limited his life activities including maintaining steady employment and housing" and he was under the care of the psychiatrist and had prescriptions for psychiatric medication. (Doc. 1 at 3.) Plaintiff also asserts in his *Complaint* that his five year probation was supervised by a mental health court. (Doc. 1 at 3.) In his *Opposition*, Plaintiff states "there is good reason to believe that in the future [Plaintiff] will be denied access to services when his health screenings reveal a mental disability." (Doc. 15 at 10.) This statement suggests Plaintiff's condition is ongoing; however, as Defendants note in their *Reply*, it is not alleged in the *Complaint*.

The first question is whether Plaintiff's claims were "made possible" pursuant to *Jones v. R.R. Donnelley & Sons Co.* by the ADA Amendments Act of 2008 ("ADAAA"). If so, the default four-year prescriptive period applies.

The ADAAA essentially broadened the definition of "disability" to make it easier for an individual seeking protection under the ADA to establish that he or she has a disability. *See Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 245–46 (5th Cir. 2013). The ADAAA did not alter the

24

definition of disability, but it added provisions 42 U.S.C. § 12102(2)-(4) to supersede cases that interpreted the scope of "disability" narrowly. *Neely*, 735 F.3d 245.  Prior to the ADAAA, the ADA defined "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478, 119 S. Ct. 2139, 2144, 144 L. Ed. 2d 450 (1999). In *Sutton*, the Supreme Court held severe myopia did not constitute a "disability" under the ADA. *Id.* at 488–89. The Court reasoned that because corrective measures for vision exist, myopia did not "substantially limit" any major life activities of the petitioners. *Id.* Similarly, the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 185, 122 S. Ct. 681, 684–85, 151 L. Ed. 2d 615 (2002), narrowly interpreted the definition of "disability" to preclude an ADA claim brought by an individual disabled by carpal tunnel syndrome reasoning that a condition that restricts certain minor activities did not qualify as a substantial limitation pursuant to the ADA. These decisions led Congress to craft the ADAAA. *Neely*, 735 F.3d at 245. The question is whether Plaintiff's alleged disability was possible pre-ADAAA.

Prior to the ADAAA, it was common for courts to exclude individuals with diagnoses like alcoholism from ADA protections based on its temporary or episodic nature. (Doc. 15 at 4.) Plaintiff relies on pre-ADAAA cases in which courts held that substance abuse and alcohol addictions were not "disabilities" under the ADA when they were merely "temporary afflictions." (Doc. 15 at 4.) In *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997), the court held that the plaintiff failed to establish that his alcoholism substantially impaired any major life activity. The court explained that the plaintiff's "inebriation was temporarily incapacitating" and impermanent based on the facts alleged, so plaintiff's alcoholism did not constitute a disability

under the ADA. *Id.* at 316–17. In *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 857 (5th Cir. 1999), the court held that the plaintiff's disability, substance abuse, was not an ADA qualifying disability because a drug addiction did not qualify as an ADA disability if it was not substantially limiting. *Id.* at 860.

While the ADAAA provision 42 U.S.C. § 12102 states that a "disability" as defined in the ADA includes "any impairment that is episodic or in remission if it would substantially limit a major life activity when active" and thus encompasses Plaintiff's diagnosis, it is unclear from the *Complaint* whether his claims were made possible by the ADAAA. Neither Plaintiff's *Complaint* nor his *Opposition* provide facts detailing the nature of his diagnosis. Relying on the facts alleged in the *Complaint*, Plaintiff has substance induced psychosis and stimulate and opiate use disorders, was enrolled in mental health court supervision, and he receives ongoing mental health treatment. (Doc. 1 at 3.) The *Complaint* states his condition "substantially limited his life activities including maintaining steady employment and housing," but the Court cannot rely on a legal conclusion alleged in the *Complaint* in deciding this issue.

The pre-ADAAA cases cited by Plaintiff each explain the case by case determination required in their analysis. *See Zenor*, 176 F.3d at 859–60.  In *Burch v. Coca–Cola Co.,* 119 F.3d 305 (5th Cir. 1997), the court held that alcoholism is not a disability *per se* under the ADA. The ADA requires an individualized inquiry to determine whether a particular plaintiff is disabled."). In *Zenor*, the court relied in its decision on the plaintiff's failure to allege facts regarding the qualitative nature of his addiction or the effect his addiction had on his ability to work. Similarly, Plaintiff fails to allege facts regarding the nature of his episodic condition, the particular effect on his life, or the history and timing of his episodes. Without alleging more facts in support of the

contention that the episodic nature of Plaintiff's diagnosis would have excluded it from ADA

protection pre-ADAAA, the four-year prescriptive period does not apply.[2]

Thus, the next question is whether Plaintiff's claims prescribed when applying the one-

year prescriptive period. Plaintiff's cause of action accrued the moment he knew or should have

known that he was being denied the benefits access to the substance abuse treatment program and

other programs typically accessible to DOC inmates. *See Frame*, 657 F.3d at 238.

> As this Court has previously explained:

> The Court's starting point is the language of the statutes. See *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013).

> Both laws use the passive voice and the present tense. Consider Title II. *See* 42 U.S.C. § 12132. It mandates that "no qualified individual with a disability shall, by reason of such disability, *be excluded* from participation in or *be denied* the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (emphasis added). Next, consider § 504 of the RA. *See* 29 U.S.C. § 794(a). It mandates that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, *be excluded* from the participation in, *be denied* the benefits of, or *be subjected* to discrimination under any program or activity receiving Federal financial assistance." *Id.* (emphasis added).

> Congress's use of the present tense suggests that a new claim accrued on each day the Department failed to correct a non-compliant service, program, or activity. *See Hamer v. City of Trinidad*, 924 F.3d 1093, 1104 (10th Cir. 2019).

*Guy v. LeBlanc*, 400 F. Supp. 3d 536, 542 (M.D. La. Aug. 29, 2019).

The *Complaint* states that Plaintiff was held at HRDC until his release on December 12,

2017. (Doc. 1 at 5.) While the injuries were sustained well over a year prior to the filing of the

*Complaint*, Plaintiff maintains that he was unaware of the programs to which he was denied access

during his time at HRDC until the May 23, 2019 deposition of Robin Milligan. (Doc. 15 at 6.)

---

[2] However, as will be explained below, the Court will grant Plaintiff leave to amend to allege facts about his alleged disability that will be sufficient to demonstrate that the four-year limitations period does apply.

While this is not alleged in the *Complaint*, dismissal pursuant to a motion to dismiss under Rule 12(b)(6) based on an affirmative defense such as prescription is only proper when it is evident from the *Complaint* that the action is untimely. *See Frame*, 657 F.3d at 222. The *Complaint* establishes that Plaintiff should have known that he was denied the benefit of substance abuse treatment because he should have been aware from his sentencing that he was ordered to Steve Hoyle for substance abuse treatment. Plaintiff's cause of action arose when he was denied the benefits of substance abuse treatment due to his disability while held at HRDC. As Defendants explain, "[a]t the absolute latest, Plaintiff's claims about being denied admission to Steve Hoyle accrued December 12, 2017, when he knew absolutely that he was to be released from prison without attending that program." (Doc. 17 at 8.) The prescriptive period to bring the claim based on denied access to substance abuse treatment accrued each day he was denied access to the program, but since years have passed since he was held at HRDC and denied substance abuse treatment, the one-year prescriptive period for that claim has run.

As to Plaintiff's claims for denied access to sports, hobby craft, and educational programs, Plaintiff alleges in the *Complaint* that he was unaware that the HRDC facility was "only [] a short term screening facility" that denied him access to these additional programs and activities due to his disability. (Doc. 1 at 5.) It is not evident from the *Complaint* when Plaintiff had actual knowledge that he was denied access to the additional benefits offered to non-disabled inmates, but Plaintiff claims that it was on May 23, 2019 from the deposition of Robin Milligan. (Doc. 15 at 6.) However, as already stated, Plaintiff should have known of his injury, denied access to treatment, each day he remained at HRDC without treatment. "For the purposes of deciding when a statute of limitation accrues, however, actual knowledge is not controlling." *Newman*, 464 F. App'x at 362. Plaintiff's should have known of his denied access to substance abuse treatment due

to his disability which then triggered a duty of inquiry that should have led him to determine that he was being denied access to other programs in addition to substance abuse treatment. Under these circumstances, Plaintiff's lack of access to substance abuse treatment due to his disability triggered a duty to investigate his injury and the facts underlying his injury further. Thus, a new claim for a complete and present cause of action accrued each day at HRDC. At the latest, Plaintiff's claim for this action accrued on December 12, 2017, the day of his release from HRDC. He had one year to bring his claim which ran on December 12, 2018. Therefore, this action is prescribed.

### 4. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice

29

(and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright, Arthur R. Miller, *et al*., *Federal Practice and Procedure* § 1357 (3d ed.

2016).

Here, the Court applied the one-year limitations period in part because Plaintiff failed to

allege sufficient facts to establish that his action was made possible by the ADAAA.  However,

the Court finds that it will act according to the above "wise judicial practice" and grant Plaintiff at

least one opportunity to amend the operative complaint to allege facts about his alleged disability

that are sufficient to obtain the four-year limitations period.  Accordingly, the Court grants Plaintiff

leave to amend the complaint to cure the above deficiencies.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted* (Doc. 11) filed by Defendants the State of Louisiana and the Department of Public Safety & Corrections and Secretary James M. LeBlanc is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for injunctive relief under the ADA/RA is **DISMISSED WITHOUT PREJUDICE** for lack of standing.

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims under the ADA/RA are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.  Plaintiff shall be given twenty-eight (28) days in which to amend his complaint to cure any deficiencies.  Failure to do so will result in the dismissal of his claim with prejudice.

Signed in Baton Rouge, Louisiana, on <u>February 2, 2021</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**