UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRIAN McNEAL

VERSUS

LOUISIANA DEPARTMENT
OF PUBLIC SAFETY &
CORRECTIONS, and
JAMES LEBLANC.

CIVIL ACTION

NO. 3:20-cv-00312-SDD-SDJ

## FIRST AMENDED COMPLAINT

NOW INTO COURT, through counsel, comes Petitioner Brian McNeal, who states:

### INTRODUCTION

1. This case is about Defendants' refusal to allow Brian McNeal access to a program for substance abuse treatment – treatment that was urgently needed and in fact court-ordered – solely on the basis of Mr. McNeal's disability.

2. In 2017, Mr. McNeal was on probation for a non-violent crime and was enrolled in Orleans Parish Criminal District Court's mental health court, a specialty court designed to reduce recidivism by providing services to probationers with mental health diagnoses.

3. On August 3, 2017, Judge Karen Herman found that Mr. McNeal was in technical violation of the conditions of his probation, and on the recommendation of Mr. McNeal's probation agent and mental health case manager, Judge Herman sentenced Mr. McNeal to serve 90 days at the DOC's Steve Hoyle Intensive Substance Abuse Program.

4. Despite the judge's order and the probation agent and counselor's recommendations, Mr. McNeal never set foot inside Steve Hoyle or any other substance abuse treatment program. Instead, he remained at Elayn Hunt Correctional Center (EHCC) in an area that amounts to a "waiting room" for 106 days.

5. Medical staff at EHCC made the decision to disregard the judge's order and the probation agent and case manager's recommendation and instead to leave Mr. McNeal in that "waiting

1

room," where he had no access to substance abuse treatment or any other programs or services typically available to DOC inmates. That decision was based solely on the fact that Mr. McNeal has been diagnosed with mental health conditions. Those mental health conditions constitute a disability under the law.

6. The way Defendants treated Mr. McNeal violates federal anti-discrimination laws. Mr. McNeal files this lawsuit to hold the DOC accountable for the discrimination and lack of accommodation he suffered.

## JURISDICTION AND VENUE

7. Plaintiff's claim arises under federal civil rights law. This Court has jurisdiction over Plaintiff's claims of federal rights violations under Title II of the Americans with Disabilities Amendments Act and the Rehabilitation Act, which are enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

8. The venue is proper in the Middle District of Louisiana under 28 U.S.C. §1391(b)(2). A substantial part of the events giving rise to the claim occurred in the Middle District of Louisiana.

## PARTIES

9. Plaintiff Brian McNeal is a person of the full age of majority maintaining a residence in New Orleans, LA. Upon information and belief, he respectfully represents the facts and causes of action pled herein against the Defendants. He is a person with a disability. *See* 42 U.S.C. § 12132.

10. Defendant James LeBlanc is the Secretary for the Louisiana Department of Public Safety & Corrections. He is sued in his official capacity.

11. Defendant the State of Louisiana Department of Public Safety & Corrections is a department of the State of Louisiana. It is a recipient of federal financial assistance as that term is used in the Rehabilitation Act.

# FACTS

**A. Brian McNeal has a Disability and Defendants Knew That.**

12. Plaintiff realleges and incorporates each and every foregoing paragraph.

13. On October 26, 2015, Brian McNeal pled guilty to possession of cocaine and drug paraphernalia in Orleans Criminal District Court (Case No. 524-699).

14. He was sentenced to a five-year suspended sentence, with five years of active probation, and he was enrolled in mental health court supervised by Judge Karen Herman.

15. Mr. McNeal began his participation in mental health court in January of 2016. At that time, he was also being supervised by agents with DOC's Department of Probation and Parole.

16. The probation agents were aware that Mr. McNeal was a mental health court client, and therefore DOC was aware that Mr. McNeal suffered from a mental impairment.

17. Mr. McNeal's mental impairment substantially limited his life activities including maintaining steady employment and housing.

18. According to Mr. McNeal's medical records possessed by DOC, his mental health diagnoses include Substance Induced Psychosis and Stimulant and Opiate Use Disorders.

19. Substance Induced Psychosis is an episodic mental impairment causing hallucinations and delusions, often but not necessarily as the result of substance use or withdrawal.[1]

20. Symptoms of Substance Induced Psychosis "are often brief, resolving shortly" though effects may linger.[2]

---

[1] *See, e.g.*, Carol Tamminga, MD, *Merck Manual*, "Substance-/Medication-Induced Psychotic Disorder," (May 2020) avaialble at https://www.merckmanuals.com/professional/psychiatric-disorders/schizophrenia-and-related-disorders/substance-medication-induced-psychotic-disorder.
[2] *Id.*

21. The scientific literature describes Substance Induced Psychosis as an "episodic disorder."[3] It describes substance induced psychosis as "psychotic episode resulting from intoxication or withdrawal of a substance."[4]

22. Indeed, the episodic nature of the disease is a core distinguishing characteristic. The American Addiction Centers explains that "Drug-induced psychosis, also known as substance-induced psychotic disorder, is simply any psychotic episode that is related to the abuse of an intoxicant."[5]

23. Mr. McNeal's symptoms are episodic in nature, as he experiences mood swings, hallucinations, and similar mental effects that typically only last for a short period of time.

24. The records indicate DOC had knowledge that Mr. McNeal was under the treatment of a Dr. Cramer at Crescent City Behavioral Health in New Orleans, LA, and that Mr. McNeal had prescriptions for Risperdal, Remeron, and Prozac – all psychiatric medications.

**B. A Judge Ordered That Mr. McNeal Serve 90 Days at a DOC Custodial Substance Abuse Treatment Program.**

25. On July 26, 2017, Mr. McNeal appeared in court for a mental health court hearing, along with his probation agent.

26. At that time, due to allegations of Mr. McNeal's noncompliance with all conditions of his probation, Judge Herman ordered Mr. McNeal remanded to Orleans Parish Prison and she set a hearing date for a rule to show cause why his probation should not be revoked.

27. On August 3, 2017, Judge Herman found that Mr. McNeal was in technical violation of his probation.

---

[3] Dawson R, Green AI, Drake RE, McGlashan TH, Schanzer B, Lavori PW. Developing and testing adaptive treatment strategies using substance-induced psychosis as an example. Psychopharmacol Bull. 2008;41(3):51-67. Available online at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2615414/
[4] Kahn, Jeffrey, *Psychotic Disorders: Comorbidity Detection Promotes Improved Diagnosis And Treatment*, Elsevier Health Sciences (2020), at pg. 107.
[5] https://americanaddictioncenters.org/co-occurring-disorders/drug-psychosis-comorbidity

28. She sentenced Mr. McNeal to serve 90 days at the Steve Hoyle program as recommended by Mr. McNeal's probation agent and mental health court case manager:

> THE COURT ADOPTED THE RECOMMENDATION OF AGENT LABOWE AND CASE MANAGER KRISTEN JUPITER. >COURT AMENDED PROBATION TO INCLUDE THESE SPECIAL CONDITIONS: >THE COURT ORDERS THE DEFENDANT'S PROBATION BE REVOKE UNDER THE PROVISIONS OF ACT 402 AND THAT THE 90 DAY SENTENCE BE SERVED AT THE STEVE HOYLE PROGRAM.

29. Act 402 allows for probationers to be sentenced to serve 90 days resulting from a revocation based on a technical violation of probation, and specifically provides for the 90-day sentence to be served as a "custodial treatment program," such as the Steve Hoyle program.

30. The Steve Hoyle Intensive Substance Abuse Program (SHISAP) is located at Bossier Parish Correctional Center – Medium Security in Plain Dealing, Louisiana. SHISAP is a 600-bed in-patient substance abuse program. The program provides clinical substance abuse services to adult male offenders and their families in a correctional setting. SHISAP uses researched based curriculums to educate offenders on addiction and pro-social behavior.

**C. The DOC Disregarded the Judge's Order and Denied Mr. McNeal Access to a Substance Abuse Treatment Program and Other Programs Due to his Disability.**

31. On August 29, 2017, Mr. McNeal was transferred from the Orleans Parish Prison to the DOC's Elayn Hunt Correctional Center ("EHCC") near Baton Rouge.

32. Upon his arrival he was held at the Hunt Reception and Diagnostic Center ("HRDC").

33. Mr. McNeal was scheduled to be transferred to the Steve Hoyle Program on September 5, 2017, as the judge ordered and his probation agent and mental health case manager recommended. However, that did not occur.

34. The reason Mr. McNeal was never transferred to the Steve Hoyle program is because medical staff at EHCC cancelled the transfer based on their determination that Mr. McNeal had a mental impairment that disqualified him from the program.

35. After EHCC medical staff cancelled Mr. McNeal's transfer to Steve Hoyle due to his disability, he remained incarcerated at the HRDC until his eventual release on December 12, 2017.

36. He spent a total of 106 days as a prisoner at HRDC.

37. The HRDC is a facility within EHCC that acts as a "waiting room" – inmates are held there while they are assessed, classified, and then sent on to another facility.

38. Because HRDC is intended for use primarily as a short-term screening location for inmates rather than a long-term housing option, inmates held there do not have access to programs that are available at other facilities.

39. For example, HRDC inmates have no access to sports, hobby craft, educational programs, substance abuse programs, etc.

40. During the time that Mr. McNeal was incarcerated at HRDC, he did not have access to any substance abuse treatment programs.

41. During the time that Mr. McNeal was incarcerated at HRDC, he was did not have access to sports.

42. During the time that Mr. McNeal was incarcerated at HRDC, he was did not have access to hobby craft.

43. During the time that Mr. McNeal was incarcerated at HRDC, he was did not have access to educational programs.

## CAUSES OF ACTION

### Violation of the ADA and the Rehabilitation Act
### (All Defendants)

44. Plaintiff realleges and incorporates each and every foregoing paragraph.

45. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

46. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

47. Title II of The Americans with Disabilities Act and Section 504 of the Rehabilitation Act require that public entities affirmatively ensure that disabled people have meaningful access to programs provided. Substance abuse treatment in prison is a program, as demonstrated by its specific inclusion in La. R.S. 15:574.9(G). Since prisoners are uniquely dependent on prisons for the services they provide – being unable to obtain, for example, substance abuse treatment elsewhere – prisons have a higher obligation to provide meaningful access to their disabled prisoners. *See Pierce v. District of Columbia*, 128 F.Supp.3d 250 (D.C. 2015).

48. Title II of the ADA and the Rehabilitation Act apply to state prisons: "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Prisoners may sue a state for monetary damages under the ADA, as Title II of the ADA abrogates state sovereign immunity. *United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877 (2006).

49. At all times relevant to this action, Brian McNeal suffered from an impairment that substantially limited his life activities and met the definition of a disability within the meaning of the ADAA, 42 U.S.C. § 12102(2), and the Rehabilitation Act, 29 U.S.C. § 705(9*). Oxford House, Inc. v. City of Baton Rouge,* 932 F. Supp. 2d 683 (M.D. La. 2013).

50. But even if Mr. McNeal did not in fact suffer from such an impairment, he would still be protected. The statutes also protect persons who are regarded by a public entity as having a

7

physical or mental impairment that substantially limits a major life activity, whether or not that person actually has an impairment, and persons who have a record of a disability.

51. Defendants regarded Mr. McNeal as disabled – whether or not he actually was – when they decided that his mental or physical health conditions were so debilitating as to exclude him from the SHISAP program.

52. Defendants had a record of Mr. McNeal's disability because they had records reflecting his mental health diagnoses of Substance Induced Psychosis and Stimulant and Opiate Use Disorders. The records show that Mr. McNeal was under the treatment of a Dr. Cramer at Crescent City Behavioral Health in New Orleans, LA, and that Mr. McNeal had prescriptions for Risperdal, Remeron, and Prozac – all psychiatric medications.

53. Symptoms of Substance Induced Psychosis, such as hallucinations and delusions, "are often brief, resolving shortly after the causative drug is cleared" but in some cases the effects can linger for longer periods of time.[6]

54. Mr. McNeal's symptoms are consistent with the episodic nature of Substance Induced Psychosis, as he experiences mood swings, hallucinations, and similar mental effects that, while serious, typically only last for a short period of time before he returns to normal functioning.

55. Because Mr. McNeal's particular diagnosis – Substance Induced Psychosis – is episodic in nature, it was not a recognized disability under the ADA until the 2008 amendments. 42 USCA § 12101.

56. Defendants receive federal funds.

57. When Defendants refused to provide Mr. McNeal access to an urgently needed, court-ordered substance abuse treatment program by reason of his disability, they violated Title II of the Americans with Disabilities Act and the Rehabilitation Act.

---

[6] *See, e.g.*, Carol Tamminga, MD, *Merck Manual*, "Substance-/Medication-Induced Psychotic Disorder," (May 2020) available at https://www.merckmanuals.com/professional/psychiatric-disorders/schizophrenia-and-related-disorders/substance-medication-induced-psychotic-disorder.

58. When Defendants excluded Mr. McNeal from access to sports, hobby craft, educational programs, substance abuse programs, etc. by reason of his disability, they violated Title II of the Americans with Disabilities Act and the Rehabilitation Act.

59. Defendants also use eligibility criteria that tend to screen out people with disabilities. 28 C.F.R. § 35.130(b)(8). Specifically, a court and probation agent deemed Mr. McNeal eligible for a 90-day sentence to be served at a custodial substance abuse treatment program under Act 402. Defendants then denied him access to that program because he suffers from a mental impairment that is directly related to his substance abuse problems.

60. The DOC screening process leads to the absurd and unlawful result we see here – Mr. McNeal needs substance abuse treatment because he suffers from a substance abuse disorder, but he is denied access to the treatment program precisely because of that same disorder.

61. Defendants failed to provide Mr. McNeal with meaningful access to the services at issue in this case.

62. Defendants failed to provide Mr. McNeal with program access to the services at issue in this case.

63. Defendants discriminated against Mr. McNeal with deliberate indifference to his needs as an individual with a disability.

64. Based on the facts alleged above, Defendants intentionally discriminated against Mr. McNeal.

65. Further, Defendants were purposeful in their choices, which is sufficient to constitute intentional discrimination under the RA and ADA.

66. In the alternative, Defendants are liable under the ADA and RA pursuant to the case of *Kelly v. Boeing Petroleum Servs., Inc.*, in which the Fifth Circuit held that the Supreme Court case of *Alexander* expressly rejected the notion that a plaintiff is required to show intentional

discrimination to establish a prima facie case of disparate impact discrimination under the RA. 61 F.3d 350, 365 (5th Cir. 1995).

67. The harm sustained by Mr. McNeal is the expected and foreseeable consequence of Defendants' failure to comply with the requirements and mandates of the ADA and RA. These statutes and accompanying regulations exist to ensure that those with mental impairments or other disabilities are not denied equal access to necessary programs. When the State of Louisiana failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Mr. McNeal in this lawsuit.

## RELIEF REQUESTED

68. Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

    A. Declaratory relief;

    B. Compensatory damages in an amount not to exceed $20;

    C. Legal costs and attorneys fees;

    D. Other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

*/s/ William Most*
William Most, La. Bar No. 36914
David Lanser, La. Bar No. 37764
Most & Associates
201 St. Charles Ave. Suite 114 #101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com